**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEMCHAK PARTNERS LIMITED PARTNERSHIP, <u>et</u> <u>al.</u>,** | : | **CIVIL ACTION NO. 3:13-2289** |
| | : | |
| **Plaintiffs** | : | **(JUDGE MANNION)** |
| | : | |
| **v.** | : | |
| | : | |
| **CHESAPEAKE APPALACHIA, LLC.,** | : | |
| | : | |
| **Defendant** | : | |

## M E M O R A N D U M

Pending before the court are the following: (1) a motion to intervene in the above-captioned matter filed by Gayle and Russell Burkett on behalf of themselves and the putative arbitration class they represent, as well as at least eighty-seven (87) other individuals, (hereinafter the Landowners)[1]; (Doc. 25); (2) a motion to intervene on behalf of Paul F. Sidorek, (Doc. 36); and (3) a motion to consolidate filed by Gayle and Russell Burkett on behalf of the Landowners, (Doc. 63).

By way of relevant background, the named plaintiffs filed a proposed class action complaint on August 30, 2013, in which they seek monetary damages and declaratory and injunctive relief based on alleged underpayment of royalties by the defendant on natural gas produced by the defendant under common oil and gas leases entered into by the named

---

[1]The motion to intervene lists the Burketts plus eight-seven (87) other individuals. However, in the reply brief in support of their motion, the Landowners' counsel indicates that this number is up to 126 and that counsel will move to add the additional proposed intervenors. As of this date, counsel has not so moved.

plaintiffs and others similarly situated in the Commonwealth of Pennsylvania. (Doc. 1). A motion for preliminary approval of the class action settlement was filed by the parties the same day. (Doc. 3).

An answer to the plaintiffs' complaint was filed by the defendant on September 3, 2013. (Doc. 5).

On September 12, 2013, a motion to intervene in the above-captioned matter was filed on behalf of the Landowners. (Doc. 25). A supporting memorandum of law was filed on October 2, 2013. (Doc. 40). On October 16, 2013, the named plaintiffs filed a brief in opposition to the Landowners' motion to intervene, (Doc. 50), which was followed by the defendant's opposing brief that same day, (Doc. 52). The Landowners filed a reply brief on October 30, 2013. (Doc. 56).

In the meantime, on September 25, 2013, another motion to intervene in the above-captioned matter was filed by Paul F. Sidorek[2]. (Doc. 36). Mr. Sidorek filed a supporting brief on October 15, 2013. (Doc. 49). The defendant filed a brief in opposition to Mr. Sidorek's motion to intervene on

---

[2]Paul and Sara Sidorek filed their own separate civil action against Chesapeake on January 28, 2013. See Civil Action No. 3:13-0208. By memorandum and order dated March 24, 2014, the court granted Chesapeake's motion to compel arbitration and stay and directed the parties to proceed to arbitration. (Doc. 22). On June 24, 2014, the parties informed the court that they had not initiated the arbitration, but, instead, the Sidoreks appealed the court's order. The parties were set to engage in the Third Circuit's Telephone Mediation Program on July 22, 2014. (Doc. 25). By notice filed on September 23, 2014, the parties informed the court that they are continuing to discuss settlement as part of the Mediation Program. (Doc. 26).

October 25, 2013, (Doc. 53), which was followed by the named plaintiffs' opposing brief that same day, (Doc. 54).

On December 20, 2013, the defendant filed an action in this court against the Burketts seeking relief in the form of an injunction enjoining the putative class arbitration proceedings for which the Burketts are the named plaintiffs. (Civil Action No. 3:13-3073). On December 30, 2013, the Landowners filed a motion to consolidate the action filed by Chesapeake against the Burketts into the above-captioned matter. (Doc. 63). A supporting brief was filed by the Landowners on January 3, 2014. (Doc. 65). On January 14, 2014, the named plaintiffs in the above-captioned matter filed a brief in opposition to the Landowners' motion to consolidate, (Doc. 66). Chesapeake filed a brief in opposition to the motion to consolidate on January 17, 2014. (Doc. 67).

### 1.    Landowners' Motion to Intervene

There are several aspects to the Landowners' motion to intervene. The Landowners initially seek leave to intervene as a matter of right under Fed.R.Civ.P. 24(a)(2) or, in the alternative, for permissive intervention under Fed.R.Civ.P. 24(b)(1). They further move to compel class arbitration on the issues raised in the instant action, and dismiss the instant action: (1) in favor of arbitration pursuant to the Federal Arbitration Act, (FAA), 9 U.S.C. §1, et seq.; (2) for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P.

3

12(b)(1); and/or (3) for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). Furthermore, the Landowners argue that Chesapeake should be enjoined from future attempts to settle this matter in court outside the proper bounds of arbitration during the currently-pending AAA putative class arbitration. In the alternative, if the instant action is not dismissed, the Landowners seek various forms of other legal and equitable relief.

Preliminarily, the Landowners provide that Chesapeake has signed gas leases with thousands of Pennsylvania landowners, a vast majority of which require arbitration of disputes. The Landowners were aware of the arbitration provisions in the leases and filed the previously mentioned putative class arbitration against Chesapeake. Specifically, in April 2013, the Landowners initiated a suit against Chesapeake and others before the American Arbitration Association, ("AAA"), in the form of a class action demand. The claims in the arbitration action overlap those in the above-captioned matter, in that the Landowners claim that the royalty payments received from Chesapeake are insufficient due to improper calculations and deductions. A scheduling order was entered in the Landowners' case by the AAA panel and, although Chesapeake initially participated in the arbitration proceedings by filing an answer and counterclaims on April 26, 2013, it later sought to halt the arbitration proceedings on a classwide basis and stay the proceedings as to the Burketts until they decided whether to opt out of the settlement in the

above-captioned matter. The AAA panel declined to halt the arbitration proceedings and continued with briefing on the issue of class arbitrability as scheduled. By order dated January 28, 2014, the AAA panel determined that it has the authority in the first instance to decide whether the arbitration can proceed as a class arbitration and set a briefing schedule on the matter. See Chesapeake Appalachia, LLC v. Burkett, Civil Action No. 3:13-3073, Doc. 25, Ex. 2.

On July 30, 2014, Third Circuit issued its precedential opinion in Opalinski v. Robert Half Intern. Inc., ___ F.3d ___, 2014 WL 3733685 (D.N.J. July 30, 2014), in which it held that, absent clear and unmistakable evidence to the contrary, it is the court that decides the issue of class arbitrability.

Subsequently, on September 11, 2014, the AAA panel issued a "Partial Final Clause Construction Award" in the Burketts' case. (Doc. 73). In its decision, the AAA panel reconsidered whether it has the authority to determine class arbitrability in the first instance in the wake of Opalinski and, if it does, whether the arbitration clause in the Burketts' case permits the arbitration to proceed on a class basis. As to the first issue, the AAA panel reaffirmed its initial decision concluding that it has the authority to decide class arbitrability and finding the Third Circuit's opinion in Opalinski to be fully distinguishable. As to the second issue, the AAA panel concluded that the parties' arbitration agreement did not preclude class treatment. Under Rule 3 of the Supplementary Rules for Class Actions of the American Arbitration

Association, the AAA panel stayed its award for thirty days to permit judicial review.

The Landowners charge in their motion to intervene that Chesapeake chose to enter into settlement with the named plaintiffs' counsel in the above-captioned matter, as opposed to the Landowners' counsel, due to the former's willingness to settle for what the Landowners deem an inadequate recovery (only a fraction of the past wrongful royalty deductions), whereas the Landowners' counsel believes that the Landowners are entitled to 100% of the wrongful royalty deductions and are prepared to pursue full recovery in arbitration[3].

The Landowners argue that Chesapeake signed leases with thousands of landowners, a majority of which require arbitration – it then breached the "no deductions" clause of the leases. The cases, which turn on this one provision in the leases, are suitable for class adjudication, according to the

---

[3]Although the Landowners suggest that Chesapeake "perhaps" conducted a "reverse auction" by negotiating with the named plaintiffs' counsel, this does not appear to be the case. As stated by the Landowners, a reverse auction occurs in a class action when the defendant contacts and induces multiple plaintiffs' attorneys to compete against each other, with the party willing to take the lowest bid winning the right to settle the matter. However, the materials in this case indicate that Chesapeake did not contact or induce the named plaintiffs' counsel and Landowners' counsel to compete against each other. Instead, it was the named plaintiffs' counsel that contacted Chesapeake with their claims and the offer to conduct settlement discussions. It was in the midst of these settlement discussions between Chesapeake and the named plaintiffs that the Burketts filed their purported class arbitration.

Landowners, and they argue that Chesapeake, having consented to the arbitrators' jurisdiction, participated in selecting arbitrators and filed a responsive pleading, should now be bound by the rules of class arbitration, including settlement.

With the above in mind, the Landowners first argue that the court should grant their motion to intervene by way of right. Pursuant to Fed.R.Civ.P. 24(a)(2), "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

In the absence of a federal statute which confers a right to intervene, and there is no such statute in this case, Rule 24 authorizes a party to intervene as of right if the movant can establish: (1) a timely application for leave to intervene has been filed; (2) a sufficient interest in the underlying litigation; (3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and (4) that the existing parties to the action do not adequately represent the prospective intervenor's interests. Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 220 (3d Cir. 2005) (citation omitted). The movant's failure to establish any factor is fatal. Id.

In opposing the Landowners' motion to intervene, neither the existing named plaintiffs nor Chesapeake argues that the motion to intervene is

untimely or that the intervenors do not have a sufficient interest in the underlying litigation. Instead, their main contention is that the proposed intervenors have not established a threat that their interests will be impaired or affected by the disposition of the underlying action. As to this third factor in the Rule 24(a)(2) analysis, the inquiry is whether, absent intervention, the suit will foreclose the ability of the proposed intervenors to protect their interests. In deciding this factor, courts look to, among other things, whether there are other proceedings and fora in which the proposed intervenors can protect their interests.

Here, there are other proceedings through which the proposed intervenors can protect their interests. If the court grants preliminary approval of the class action settlement in the above-captioned matter, and if the proposed intervenors choose not to be bound by the terms of the settlement, they can opt out of the settlement class and reserve all of their rights to proceed with arbitration.

Although the proposed intervenors argue that any suggestion that they opt out of the settlement class would leave a settlement class in this case of zero, this is not necessarily the case. There are several named plaintiffs who, at the current time, apparently wish to settle their claims rather than proceed through the arbitration process with Chesapeake. By the proposed intervenors' account, there are thousands of individuals with whom Chesapeake signed leases. It is not known how many of these other

8

individuals would choose to accept the terms of the proposed settlement with Chesapeake as well. While the proposed intervenors' numbers allegedly exceed 100[4], there is certainly no indication that every single one of the claimed thousands of lease holders would wish to opt out of the proposed settlement in favor of arbitration.

Because the court finds that the proposed intervenors can protect their interests by means other than intervention, the proposed intervenors have not established the third factor for intervention as a matter of right. As the proposed intervenors' failure on the third factor is fatal to their motion to intervene as a matter of right, the court need not consider the final factor. The proposed intervenors' motion to intervene as of right will be denied.

As to the proposed intervenors' motion for permissive intervention, pursuant to Fed.R.Civ.P. 24(b), a person or an entity, who is not a named party in an action, may seek to intervene in the interested litigation. See PA Prison Soc. v. Cortes, 622 F.3d 215, 232 (3d Cir. 2010). Rule 24(b) provides:

> [U]pon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed.R.Civ.P. 24(b). Thus, for permissive intervention, a proposed intervenor must show that: (1) its motion is timely; (2) it has questions of law or fact in

---

[4]See n.1.

common with the pending action; and (3) intervention will not cause undue delay or prejudice for the original parties. If a third party can satisfy all of these requirements, the court may, in its discretion, grant that third party permissive intervention. Even where the requirements of Rule 24(b) are met however, unlike under Rule 24(a), the court is given the ultimate discretion as to whether to allow permissive intervention. The exercise of such discretion is highly fact-specific.

In this case, the proposed intervenors argue that, at the least, permissive intervention is warranted because common claims, defenses and questions of law are pending in their case before the AAA. The named plaintiffs and Chesapeake argue that permissive intervention is not warranted because granting the proposed intervenors' motion will unduly delay this action and prejudice the parties who have engaged in protracted negotiations in order to arrive at the proposed settlement pending before the court.

The court will not grant the proposed intervenors' motion under Rule 24(b). Initially, granting the motion to intervene has the potential to cause significant delay for the named plaintiffs in the instant action. Specifically, the defendant's materials provide that the named plaintiffs, including the Demchaks, began discussing claims related to their leases with Chesapeake as early as October of 2012. The named plaintiffs engaged Chesapeake in discussions and proceeded to a mediation with Chesapeake before the Honorable Edward N. Cahn, the former Chief Judge of the United States

District Court for the Eastern District of Pennsylvania. Approximately one year later, with a proposed settlement having been agreed upon, the named plaintiffs brought the instant action and sought preliminary approval of their settlement agreement. The Burketts and the other proposed intervenors, who chose to proceed by way of an arbitration filed in April 2013, now seek to intervene in the instant action, compel the parties who have come to an agreement to go to arbitration and dismiss the instant action. Were this to happen, the named plaintiffs would be subject to a delay of an unknown period of time when they have determined that they are ready to resolve their claims now. Were the intervenors' motion to be granted, it would certainly prejudice the adjudication of the rights of the original parties, all of whom seek to settle the instant litigation rather than have it proceed to arbitration. Allowing the proposed intervenors to enter the action at this stage would add unnecessary complexities that would cause undue delay in the resolution of this case. Any substantive challenges raised by the intervenors can be addressed, if they so choose, as objections to the settlement. PA Prison Soc. v. Cortes, 622 F.3d 215, 232 (3d Cir. 2010). Otherwise, the proposed intervenors are free to opt-out of the class settlement and continue and/or proceed with arbitration. Accordingly, because any attempt by the Landowners to intervene would only cause delay in the instant proceedings and prejudice the original parties, their motion for permissive intervention pursuant to Rule 24(b) will be denied.

The proposed intervenors also seek to compel the named plaintiffs and
Chesapeake to proceed with arbitration and to have the instant action
dismissed[5]. Having decided that the motion to intervene will be denied, the
proposed intervenors are not parties to this action. They are therefore not
entitled to the relief they seek[6].

Initially, "[t]he right to compel arbitration derives from a contractual right
. . ." See Burgess Steel Products Corp. v. Iron Workers Locals 40, 361 & 417
Union Sec. Funds, 1999 WL 795481 (D.N.J. Oct. 4, 1999) (quoting Mutual
Benefit Life Ins. Co., 783 F.Supp. 853, 865 (D.N.J. 1992), aff'd, 970 F.2d 899
(3rd Cir. 1992) (quoting Britton v. Co-Op Banking Group, 916 F.2d 1405, 1413
n.9 (9th Cir.1990)). With limited exceptions which are not applicable here,
non-parties to a contract generally lack standing to compel arbitration. See id.
As such, the proposed intervenors have no standing to compel the named

---

[5]In a most conclusory manner and without any legal briefing, the
Landowners also seek an injunction preventing the defendant from any future
attempt to settle this matter outside of the bounds of arbitration. Because the
Landowners have not even attempted to demonstrate that they are entitled to
such relief, the court will not entertain their argument for injunctive relief.

[6]The proposed intervenors argue that because the arbitration clauses
in each of the leases are valid and enforceable, the issue of class certification
is improperly before this court because it belongs solely in arbitration. The
proposed intervenors argue that Third Circuit law is clear that the issue of
class arbitrability is one for the arbitrator, not the court. Contrary to the
proposed intervenors' argument, what the Third Circuit has now held in its
decision in Opalinski, supra, is that it is, in fact, the court and not an arbitrator
which is to decide the issue of class arbitrability absent clear and
unmistakable evidence that the parties intended otherwise.

plaintiffs or any others who wish to join the proposed class in this action to arbitration.

Moreover, it is well settled that parties can waive their contractual right to arbitration like any other contractual provision. See, e.g., Ehleiter v. Grapetree Stores, Inc., 482 F.3d 207 (3d Cir. 2007). See, also Gabbanelli Accordions & Imports, L.L.C. v. Gabbanelli, 575 F.3d 693, 695 (7th Cir. 2009) ("[P]arties to an arbitration agreement can always waive the agreement and decide to duke out their dispute in court.").The named plaintiffs and Chesapeake have chosen to waive the arbitration provision in their leases and proceed in this court to settle their claims. Any other individual in the proposed class who wishes may also waive their arbitration provisions. The proposed intervenors have not cited and the court has found no basis upon which they, as non-parties to the action or the contracts at issue, can force third-parties to proceed to arbitration.

Further, because the Landowners have been denied the right to intervene and they are not parties to these proceedings, they lack standing to file and pursue a motion to dismiss the instant action. See e.g., In re coram Resource Network, Inc., 305 B.R. 386, 388 (D.De. 2004).

In the event that the instant action is not dismissed, the movants seek several forms of alternative relief, including:

- ■   an order staying the class settlement process pending discovery by Landowners' Class Counsel;

13

■    an order granting Landowners' Class Counsel permission to interview the mediator engaged by the named plaintiff's and Chesapeake to help settle the matter;

■    an order granting Landowners' Class Counsel permission to notice depositions regarding the settlement;

■    an order granting Landowners' Class Counsel document discovery regarding (1) the settlement; (2) all leases comprising the class (not limited to the named plaintiffs); (3) royalty calculations, including affiliate sale information; and (4) royalty deductions;

■    an order naming Landowners' Class Counsel as lead class counsel;

■    an order naming the Burketts as the sole named plaintiffs; and

■    an order that Landowners' Class Counsel may (1) inform all prospective class members herein as to the AAA arbitration; (2) provide them with a summary regarding the merits of the AAA claims in comparison to the merits of the purported class action settlement; and (3) publish all settlement materials so that prospective class members may fairly evaluate them.

Initially, the Landowners' counsel argue, generally, that in light of their

claims that the settlement reflects an inadequate recovery, excessive legal fees, overbroad release, potential reverse auction and/or collusion; and nondisclosure to the court of the pending Burkett arbitration, it is imperative that discovery be allowed. Specifically, the Landowners' counsel seek discovery related to the "unwarranted assumption that class arbitration is highly unlikely," which they argue appears to be a significant factor in the low recovery proposed by the settlement. To this extent, the Landowners' counsel seek to investigate Settlement Counsel's assertion that class arbitration is highly unlikely, as well as the mediator's opinion that class arbitration is "extremely unlikely if not impossible." According to counsel, discovery into these matters will enable the court to "intelligently make an appraisal of the settlement." In addition, they request discovery into the Settlement counsels' legal fees underlying the settlement, which they argue is higher than their own agreement with their clients. This discovery, as set forth above, involves interviewing the mediator who helped negotiate the settlement at hand, noticing depositions, and granting documentary discovery related to the settlement and its negotiations.

With respect to the Landowners' request for discovery, an objector may be entitled to discovery which is relevant to the determination of whether the proposed settlement is fair, adequate and reasonable. See e.g., In re Ford Motor Co. Bronco II Products Liability Litigation, 1994 WL 593998, *3 (E.D.La. 1994). In such a case, the requesting party must show what specific

information is needed from the settling parties and how that information will assist the court in its determination of the fairness of the proposed settlement.

However, "[d]iscovery of evidence pertaining to settlement negotiations is appropriate only in rare circumstances." See In re Wachovia Corp. "Pick-a-payment Mortgage Marketing and Sales Practices Litigation, 2011 WL 1496342 (N.D.Cal. Apr. 20, 2011) (citing Hemphill v. San Diego Ass'n of Realtors, Inc., 225 F.R.D. 616, 620 (S.D.Cal. 2005)). In fact, it is well-established that objectors are not entitled to discovery concerning settlement negotiations absent evidence from other sources indicating that the settlement may be collusive. See e.g., True v. American Honda Motor Co., 749 F.Supp.2d 1052 (C.D.Cal. 2010) ("An objector is only entitled to discovery of settlement negotiations if he or she lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive.") (quoting Lobatz v. U.S. West Cellular of California, Inc., 222 F.3d 1142, 1148 (9th Cir. 2000)); Mars Steel Corp. v. Continental Illinois Nat. Bank and Trust Co. of Chicago, 834 F.2d 677, 684 (7th Cir. 1987) (same). Generally, courts presume the absence of fraud or collusion in negotiating a settlement, unless evidence to the contrary is offered. See Hemphill, 225 F.R.D. at *621.

Here, the Landowners have requested broad discovery in relation to the adequacy of the proposed settlement at hand, as well as into the Settlement counsels' legal fees underlying the settlement. However, the Landowners have failed to lay a proper foundation relying on outside sources evidencing

that the proposed settlement is collusive. While the Landowners' counsel have speculated that Settlement counsel and Chesapeake may have engaged in collusion by "perhaps" conducted a reverse auction and failing to notify the court of the pending arbitration or Landowners' counsel of the instant action, which they claim resulted in an inadequate proposed recovery and overbroad release, no outside evidence has been presented to the court in this regard. In fact, a declaration from the Honorable Edward N. Cahn, the former Chief United States District Judge for the Eastern District of Pennsylvania, who served as the mediator in connection with the proposed settlement, repeatedly noted the arm's-length bargaining of the parties' counsel and further provides in part:

> Counsel made vigorous and thoughtful presentations and arguments regarding their clients' positions on key issues. The parties were represented during the mediation process by zealous, well-informed, experienced, and able counsel. The settlement was negotiated aggressively, effectively, in good faith, with a high level of professionalism, and at arm's-length, and was not a product of fraud or collusion.

(Doc. 3, Ex. 4).

Other than his part as a neutral mediator for the parties, Judge Cahn has no interest in the matter at hand. The Landowners, for their part, have failed to present sufficient evidence to refute the information provided in Judge Cahn's declaration.

With respect to the Landowners' request for discovery concerning Settlement counsels' fees, Fed.R.Civ.P. 23(h) sets forth the procedures for

the award of attorney's fees in class actions. The award of attorney's fees is a matter to be decided by the court following the appropriate procedures set forth in Rule 23 during which class members may file objections. Landowners' counsel have not provided the court with a sufficient basis upon which to depart from the Federal Rules and allow them discovery at this point into the basis of the Settlement counsels' proposed fees.

For the above reasons, the Landowners' request for discovery will be denied in its entirety. Since the court will be denying the Landowners' request for discovery, their request for a stay pending discovery will be dismissed as moot.

Next, as discussed above, the court has determined that the Burketts' request to intervene in this action will be denied. Having determined that the Burketts are not entitled to intervene in the instant action, the court will not name the Burketts as the sole plaintiffs in this action, nor will it name their counsel as lead class counsel[7].

As to the Landowners' final request to inform prospective class

---

[7]The court notes that the argument made by the Landowners' counsel that they are best able to represent the interests of the putative class because they represent over 100 landowners while the named plaintiffs' counsel represent only thirteen named clients in this action says nothing to the adequacy of the representation of counsel in this case.

Moreover, it has not gone unnoticed by the court that the Landowners' counsel seek to be appointed lead counsel for a class which was created for settlement purposes, which settlement the Landowners oppose and which they seek to have dismissed in favor of arbitration.

18

members as to the pending arbitration proceedings and provide them with a summary of the merits of the claims as to both the arbitration and the instant action, both the arbitration filed by the Burketts and the instant action are matters of public record. Thus, the court sees no reason to issue an order allowing the Landowners' counsel to inform prospective class members as to the pendency of the arbitration. Moreover, the court sees no reason to issue an order allowing the Landowners' counsel to discuss with prospective class members the merits of either action. Further, along this line, there has been no determination as to whether the arbitration filed by the Burketts will, in fact, proceed on a class basis. If it is decided that the Burketts' arbitration cannot proceed on a class basis, discussion of the arbitration with the prospective class members would be of no matter. Finally, as to this request, the Federal Rules of Civil Procedure require that class members must be noticed of the terms of the proposed settlement, and that the court may only approve a settlement which binds class members after a hearing and upon a finding that it is fair, reasonable and adequate. As such, the court finds it unnecessary to issue an order which allows the Landowners' counsel to publish all settlement materials so that prospective class members may fairly evaluate them.

### 2.    Mr. Sidorek's Motion to Intervene

Also pending before the court is a motion to intervene on behalf of Paul F. Sidorek. (Doc. 36). Mr. Sidorek and his wife, Sara P. Sidorek, have a

separate civil action pending before this court, <u>Sidorek v. Chesapeake Appalachia, LLC</u>, Civil Action No. 3: 13-0208, in which they are attempting to void portions of their oil and gas lease with Chesapeake and claim damages for alleged breaches of contract by Chesapeake[8]. As previously set forth by this court:

> In their complaint, the plaintiffs allege that, as Lessors, they signed an oil and gas lease with Southwestern Energy Production Company, ("Southwestern"), as Lessees, on November 11, 2009. Subsequent to the signing of the lease, the rights of Southwestern were transferred to Chesapeake Appalachia, LLC, and Chesapeake Operating, Inc.
> The plaintiffs allege that the lease had a specific term from November 11, 2009, through November 11, 2012, which has now expired. According to an addendum to the lease, the plaintiffs allege that the defendant had a potential to extend the three year lease term for an additional two years; however, in order to do so, the defendant would be required to be engaging in production on less than 50% of the plaintiffs' property that is subject to the lease agreement and also engaged in active operations of drilling, testing or equipping any new well or wells or existing well or wells on the leased premises. The plaintiffs allege that the defendants have not met these conditions. As a result, the plaintiffs allege that the lease is null and void as to all property not already in the production unit and that the defendant stands in breach of contract by continuing to hold plaintiffs' leased premises subject to a void lease. The plaintiffs are seeking a declaratory judgment that the subject lease is expired and no longer valid as to all real property named in the subject lease, but not contained within an existing production unit.
> In addition, the plaintiffs bring a claim for breach of contract alleging that beginning in August of 2012, the defendant began to pay royalty payments to the plaintiffs for the portion of their property contained within the production unit. According to the plaintiffs, the defendant is deducting costs of producing, gathering, storing, treating, dehydrating, compressing,

---

[8]The instant motion reflects that only Mr. Sidorek is attempting to intervene in the instant action.

transporting or otherwise making the oil and/or gas produced from the leased premises ready for sale or use from the royalty payments. The plaintiffs allege that the addendum to their lease specifically provides that the defendant is not permitted to reduce the royalty payments by deducting such costs. As such, the plaintiffs allege that the defendant stands in breach of contract and has been put on notice of such.

The plaintiffs further allege that the defendant has engaged in a course of conduct that has lowered the sale price of the subject gas by selling the gas obtained from the leased premises to a subsidiary of its own corporate membership at a price less than the market price. As a result, the plaintiffs allege that they are receiving reduced royalties because of the reduced sale price. The plaintiffs allege that the defendant stands in breach of contract as it is failing to obtain market value for the subject gas drawn from the leased premises.

(Civil Action No. 3:13-0208, Doc. 22) (footnote omitted).

In response to the Sidoreks' complaint, Chesapeake sought to compel arbitration and stay the federal action. (Id., Doc. 9). By order dated March 24, 2014, the court granted Chesapeake's motion and the parties were directed to proceed with arbitration on the Sidoreks' claims. (Id., Doc. 22). The Sidoreks filed a notice of appeal of the court's order with the United States Court of Appeals for the Third Circuit[9]. (Doc. 23). The parties to that suit have most recently informed the court that, rather than engage in arbitration, they opted to engage in the Third Circuit Court of Appeals' Telephone Mediation Program. (Doc. 25). Other than settlement negotiations, no further

---

[9]Interestingly, in the instant motion to intervene, Mr. Sidorek argues that he "has a concrete interest (not shared by Settlement Counsel) in precluding Chesapeake from thwarting the arbitration process." However, at the same time, Mr. Sidorek is challenging the court's order directing that he engage in the arbitration process.

developments have been noted in that case.

In the meantime, prior to the court ruling on Chesapeake's motion to compel arbitration, Paul Sidorek filed a motion to intervene in the above-captioned matter[10]. In doing so, he relied primarily upon the arguments presented by the Landowners in their motion to intervene. As with the Landowners, Mr. Sidorek's motion to intervene will be denied.

With respect to Mr. Sidorek's intervention as a matter of right pursuant to Fed.R.Civ.P. 24(a)(2), as did the Landowners, Mr. Sidorek argues that because of issues regarding his perceived inadequacy of the settlement, a threat exists that any settlement in the above matter would impair his interests. As indicated with respect to the Landowners, Mr. Sidorek has the arbitration process to protect his interests and, in fact, the court has granted Chesapeake's motion to compel arbitration in Mr. Sidorek's case. Indeed, although he has filed an appeal of the court's prior order compelling arbitration on his claims, Mr. Sidorek has agreed to engage in the Third Circuit's Telephonic Mediation Program. The court finds, therefore, that Mr. Sidorek is not entitled to intervention as a matter of right and will deny his

---

[10]Chesapeake argues Mr. Sidorek's motion should be dismissed on the basis that the brief in support of the motion was untimely filed. Upon review, the motion to intervene was filed on September 25, 2013. The supporting brief would have been due on or before October 14, 2013. See L.R. 7.6; Fed.R.Civ.P. 6(d). Mr. Sidorek's brief was filed on October 15, 2013. The court accepted Mr. Sidorek's brief for filing and, seeing no prejudice to the defendant from the one-day delay in filing the supporting brief, the court will not dismiss the motion on this basis.

motion on this basis.

As for his request for permissive intervention, as did the Landowners, Mr. Sidorek argues that this is warranted because common claims, defenses, and questions of law are pending before the AAA. In its discretion, the court has found permissive intervention unwarranted as the delay and prejudice to the existing parties weigh against intervention. Moreover, Mr. Sidorek has legal claims which fall outside of those poised for settlement in the instant action, namely that his lease has expired. Where intervention would add claims, the court in its discretion may deny intervention. See e.g., Acra Turf Club, LLC v. Zanzuccki, 561 Fed.Appx. 210 (3d Cir. 2014).

On the basis of the foregoing, Mr. Sidorek's motion to intervene will be denied.

### 3.    Landowners' Motion to Consolidate

On December 20, 2013, Chesapeake filed a separate action against the Burketts seeking to enjoin their class arbitration, ("Burkett action"). See Chesapeake Appalachia, L.L.C. v. Burkett, Civil Action No. 3:13-3073. The Landowners seek to have that action consolidated into the above-captioned matter pursuant to Fed.R.Civ.P. 42(a), arguing only that it is in the interest of economy because both actions involve Chesapeake's attempt to enjoin a putative class arbitration against it. Rule 42(a) of the Federal Rules of Civil Procedure provides:

23

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Rule 42(a) . . . confers upon a district court broad power, whether at the request of a party or upon its own initiative, to consolidate causes for trial as may facilitate the administration of justice." Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc., 339 F.2d 673, 675-76 (3d Cir. 1964), *cert. denied*, 382 U.S. 812 (1965). In considering a motion to consolidate, the court must balance the savings of time and effort gained through consolidation against the prejudice, inconvenience, or expense that it might cause. See Mincy v. Chmielewski, 2006 WL 1997457, at *2 (M.D.Pa. 2006) (citing Bernardi v. City of Scranton, 101 F.R.D. 411, 413 (M.D.Pa. 1983)).

Here, despite the movants' claim that both the instant action and the declaratory action filed by Chesapeake against the Burketts involve Chesapeake's attempt to enjoin the putative class arbitration filed by the Burketts, such is not the case. In fact, the actions which the Landowners seek to consolidate are too distinct to say that consolidating them would promote the administration of justice. Specifically, the instant action is a proposed settlement class action on the claim of underpayment of royalties by the defendant. In the Burkett action, which is a declaratory judgment action filed by Chesapeake, the only relief sought is a declaratory judgment that whether the Burketts may proceed with their arbitration on a class basis is a question

for the court, not an arbitrator and, that the circumstances of the Burketts' case do not allow for class arbitrability. Thus, the issues presented in the actions are distinct and separate – one seeks settlement on the merits of the plaintiffs' claims while the other seeks to have the court determine how the plaintiffs may proceed with their claim.

Moreover, the procedural position of each of the cases does not warrant consolidation. The instant action requires resolution of the distinct class settlement issues raised herein. In the Burkett action, Chesapeake's motion for summary judgment raises the issue of who decides class arbitrability and whether the circumstances of the Burketts' case allow for class arbitrability. Briefing on the latter issue has yet to begin.

Based on the above, consolidation of the instant action with the declaratory judgment action filed by Chesapeake against the Burketts will not promote judicial economy. Hence, the Landowners' motion to consolidate will be denied.

In light of the foregoing, an appropriate order shall issue.




_s/ Malachy E. Mannion_____
**MALACHY E. MANNION**
**United States District Judge**

**Date: September 30, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-2289-01.wpd